UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EXPORT WORLDWIDE, LTD., § | | |
| § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION NO. |
| § | | |
| ALFRED KNIGHT, Individually, § | | SA-05-CA-0647 XR |
| KNIGHT AEROSPACE PRODUCTS, INC., § | | |
| and T & M LEASE AND FINANCE, L.L.C., § | | |
| § | | |
| Defendants. § | | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (Docket Entry 36)

The matters before the Court are plaintiff Export Worldwide, Ltd.'s re-urged motion to compel, defendant Knight Aerospace Products, Inc.'s ("KAPI") response, and plaintiff's reply. (Docket Entries 36, 39, and 49). Through its motion, plaintiff asks the Court to order KAPI to provide complete responses to seven interrogatories and nineteen requests for production propounded by plaintiff.

Plaintiff served its First Set of Interrogatories and First Set of Production Requests on November 22, 2005, and KAPI served its objections and answers on December 21, 2005.[1] Plaintiff initially filed a motion to compel on February 06, 2006.[2] On March 24, 2006, I entered an Order denying the motion to compel.[3] In the Order, I found that plaintiff's statement, that KAPI's responses were improper and not in compliance with the rules, did not provide sufficient

---

[1] Docket Entry 36 at 1.

[2] Docket Entry 26.

[3] Docket Entry 29.

explanation as to why the information sought was relevant, why the claims of privilege were inapplicable, and why the objections were not in compliance with the rules. In denying plaintiff's motion, I granted plaintiff the opportunity to re-urge the motion with the appropriate support.[4] Plaintiff filed a re-urged motion to compel on April 3, 2006.[5]

Subsequently, the parties entered into alternative dispute resolution negotiations that resulted in a settlement of all claims.[6] On June 12, 2006, the District Court entered an Order Concerning Settlement, that among other things, dismissed as moot the pending motions in the case, including the re-urged motion to compel.[7] However, the parties failed to consummate the settlement, and on plaintiff's motion, the District Court reopened discovery and reinstated plaintiff's re-urged motion to compel.[8]

Having considered plaintiff's motion to compel, defendant's response, and plaintiff's reply, the motion is hereby **GRANTED**, in part, and **DENIED**, in part, for the reasons set forth below.

## Background

Plaintiff commenced this action on July 17, 2005, by filing a complaint containing multiple claims based on breach of contract and fraud.[9] Plaintiff alleged that it entered into various agreements with KAPI in which plaintiff agreed to lend money to KAPI, and in turn, KAPI agreed

---

[4] **Id.** at 2.

[5] Docket Entry 36.

[6] Docket Entry 60.

[7] Docket Entry 59.

[8] Docket Entries 63, 66.

[9] Docket Entry 1. Plaintiff subsequently amended its complaint to include a count for breach of a settlement agreement.

to repay the funds with interest.[10]  KAPI secured its indebtedness to plaintiff with 51,000 shares of KAPI stock owned by defendant Alfred Knight ("Knight") and allegedly assigned the proceeds from three contracts to plaintiff.[11]  According to plaintiff, KAPI failed to repay the funds in a timely manner, and plaintiff threatened to foreclose on its collateral.  In response to plaintiff's demands for payment, Knight allegedly endorsed his original share certificate to plaintiff on April 29, 1999, and subsequently, on March 17, 2000, KAPI issued a new certificate for 51,000 shares to plaintiff.[12]

Plaintiff further alleges that Knight and plaintiff entered into an agreement with KAPI's consent under which plaintiff would reconvey the shares to Knight upon payment of all the sums of money owed to plaintiff.[13]  In conjunction with the other agreements, KAPI allegedly agreed and represented to plaintiff that the 51,000 shares constituted a majority ownership interest in KAPI, and KAPI would not take any actions to directly or indirectly diminish plaintiff's ownership interest without plaintiff's agreement.[14]

Plaintiff contends that KAPI breached a number of its agreements with plaintiff.  Plaintiff alleges among other things that: (1) KAPI failed to turnover proceeds from the assigned contracts, (2) KAPI failed to file a UCC-1 financing statement on plaintiff's behalf after agreeing to do so, (3) KAPI issued and pledged additional common stock without consulting plaintiff, (4)

---

[10] Docket Entry 67 at ¶¶ 7 and 8.

[11] Docket Entry 36, Loan Agreement at ¶¶ 1, 3; Financing Statement at ¶ 4; Addendum at ¶ 3.

[12] Docket Entry 67, Exhs. 3, 4, 5.

[13] Docket Entry 67 at ¶ 12.

[14] **Id.** at ¶ 13.

KAPI entered into agreements with defendant T & M Leasing to take control of KAPI's business, (5) KAPI made preferential payments to suppliers and T & M Leasing, instead of paying plaintiff, and (6) KAPI failed to notify plaintiff of shareholder meetings, conduct shareholder meetings, or make its corporate books and records available to plaintiff.

Plaintiff contends that KAPI has committed breach of contract, fraud, fraud in a stock transfer, self dealing, conversion, and conspiracy. It asks for an accounting, compensatory damages, exemplary damages, and costs and attorney fees.

## Discussion

Discovery is governed by, *inter alia*, Federal Rule of Civil Procedure 26. Rule 26 provides a party with the authority to obtain discovery of any matter that is "relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and locations of persons having knowledge of any discoverable matter . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[15] Relevancy is construed liberally so that the basic issues and facts of the case are disclosed to the fullest extent practical.[16] However, the scope of discovery is not unlimited and is committed to the sound discretion of the court.[17]

Federal Rule of Civil Procedure 37(a)(2)(B) and (3) empowers the court to compel the production of documents and complete responses to interrogatories upon motion by the party

---

[15] Fed. R. Civ. P. 26(b)(1).

[16] **McClain v. Mack Trucks, Inc.**, 85 F.R.D. 53, 57 (E.D. Pa. 1979).

[17] **Id.**

seeking discovery. The burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence.[18] The party resisting discovery must likewise articulate specifically how each discovery request is not relevant or is overly broad, burdensome, or oppressive.[19]

**A. Plaintiff's First Set of Interrogatories.**

As a threshold matter, defendant again argues that plaintiff is not entitled to any of the requested information because statutes of limitations bar any claims that plaintiff might have had. As noted the March 3, 2006 Order, Federal Rule of Civil Procedure 26(b)(1) does not limit discovery to only those matters relevant to claims that can survive a yet-to-be filed dispositive motion. Currently, there are no dispositive motions pending before the Court.[20] Defendant's assertion of a statute of limitations defense without applicable authority and evidence is insufficient to support its objections to plaintiff's discovery requests.

**Interrogatory 6**

Turning to plaintiff's specific discovery requests, in Interrogatory 6, plaintiff requests defendant to identify the names of anyone who investigated the allegations in the subject matter of plaintiff's complaint prior to the time litigation was anticipated, along with the date of the investigation. Plaintiff contends that this is a standard request and limited to prevent impinging on information protected by the attorney-client and work product privileges. KAPI objects to the

---

[18] **Id.**

[19] **Roesberg v. Johns-Manville Corp.**, 85 F.R.D. 292, 296-97 (E.D. Pa.1980).

[20] Defendant filed a motion to dismiss and in the alternative for summary judgment that included the statute of limitations argument. Docket Entry 45. The District Court dismissed all pending motions subject to re-urging in the event that the parties did not finalize the settlement of the case. Docket Entry 59. As of the date of this Order, defendant has not re-urged its motion for summary judgment.

interrogatory arguing that it asks for disclosure of a consulting expert and seeks privileged information.  KAPI also avers that no one other than its attorneys investigated any of the claims.

It is unclear what additional relevant information plaintiff hopes to receive through this interrogatory.  To the extent that plaintiff requests the identity of persons with personal knowledge of the subject matter of plaintiff's complaint, Interrogatory 6 is redundant of Interrogatory 2.  In response to Interrogatory 2, KAPI supplied the names, addresses, and telephone numbers of nine persons with knowledge of the relevant facts of the case.  Plaintiff has disavowed any desire to impinge on attorney-client and work product privileges, and KAPI has stated that only its attorneys investigated the subject matter that forms the basis of plaintiff's complaint.  Furthermore, plaintiff merely addresses KAPI's objections to discovery, and fails state how the information sought is relevant or will possibly lead to admissible evidence.  Therefore, plaintiff's motion to compel further responses to its First Set of Interrogatories, Number 6 is hereby **DENIED**.

**Interrogatory 12**

Interrogatory 12 asks KAPI to identify by date and name every entity or person from which KAPI has borrowed money or granted a security interest during the period from 1996 forward.  Plaintiff argues that the information is relevant because it seeks information concerning loans made without shareholder authorization and any loans made after KAPI and Knight represented that they would file a UCC-1 financing statement on behalf of plaintiff thereby raising questions of priority concerning the collateral.  KAPI objects that the request is unduly burdensome because it seeks disclosure of all amounts borrowed no matter the size or nature of the loan and seeks information not limited in time.

KAPI secured the loans from plaintiff with Knight's stock in KAPI and certain accounts receivable as collateral, and plaintiff's case arises from defendants' actions related to the loans. According to plaintiff, Knight transferred his KAPI shares to plaintiff on April 29, 1999, and on March 17, 2000, KAPI issued plaintiff a new certificate for the 51,000 shares. Plaintiff has not provided evidence that KAPI was required to obtain shareholder approval to obtain secured or unsecured loans.

Loans obtained by KAPI that pledged company assets and company stock are relevant to plaintiff's claims that KAPI made misrepresentations to him concerning the secured status of his loans. Furthermore, the collateral provided for subsequent loans might show that KAPI breached its agreement not to dilute the majority ownership status of plaintiff by issuing more shares.

However, it is unclear what relevance unsecured loans would have to plaintiff's case. Unsecured loans would not affect the priority of plaintiff's right to foreclose on its collateral. Additionally, plaintiff's interrogatory is unduly burdensome because it would require defendant to produce records of every unsecured loan including charge accounts used for office supplies. Plaintiff has not sufficiently explained its need for this type of information. Accordingly, Plaintiff's motion to compel further responses to its First Set of Interrogatories, Number 12, as it pertains to secured loans, is hereby **GRANTED**, but is **DENIED** to the extent that it requests specific information concerning unsecured loans.

**Interrogatory 13**

Interrogatory 13 asks KAPI to identify every agreement in which it agreed not to issue further shares or dilute any shareholder's interest. Plaintiff has alleged that it entered into such an agreement with KAPI, and KAPI subsequently breached the agreement. Evidence of KAPI's

7

acknowledgment of such an agreement with plaintiff and evidence that it entered into such agreements with others is relevant to plaintiff's allegations of misrepresentation and breach of contract.  Accordingly, plaintiff's motion to compel further responses to its First Set of Interrogatories, Numbers 13, is hereby **GRANTED**.

**Interrogatories 15 and 18**

Interrogatory 15 asks that KAPI list by date each request received from plaintiff for a shareholders meeting to be held and detail its response to each request.  Interrogatory 18 asks for information concerning each shareholder meeting held by KAPI since the year end 1998, specifying who was notified, who attended, and what was discussed.  If no meeting was held, KAPI is asked to explain why not.

Defendant argues that plaintiff is not a shareholder and has no right to request a shareholders meeting.  However, plaintiff's status as a shareholder is a point of dispute in this case.  The only evidence in the record is that Knight transferred his 51,000 shares to plaintiff.  Plaintiff asserts that it attempted to exercise its rights as a shareholder and called for a shareholder meeting.  Plaintiff alleges that KAPI ignored its requests and did not notify it of any scheduled shareholder meetings.

Information concerning plaintiff's requests for shareholders meetings, information relevant to shareholders meetings that were held, and KAPI's reasons for not holding shareholder meetings are relevant to plaintiff's allegations of fraud, self dealing, and breach of contract.  Plaintiff's motion to compel further responses to its First Set of Interrogatories, Numbers 15 and 18, is hereby **GRANTED**.

**Interrogatory 19**

Interrogatory 19 requests a list of KAPI's shareholders from 1996 to the present along with the number of shares held by each. As explained above, plaintiff has provided evidence showing that it is a shareholder of KAPI. Plaintiff alleged in its complaint that KAPI represented that it was a majority shareholder and agreed not to take any action that would diminish plaintiff's majority status without plaintiff's consent. Accordingly, information concerning outstanding shares, the owners of the shares, and the value given for the shares is relevant to plaintiff's breach of contract allegations. Plaintiff's motion to compel further responses to its First Set of Interrogatories, Number 19, is hereby **GRANTED**.

### Interrogatory 21

Interrogatory 21 asks KAPI to specify the security it promised to plaintiff or its predecessors for all monies that plaintiff loaned to KAPI. KAPI objects to the interrogatory as burdensome and not properly limited in time. Subject to the objections, KAPI identified the security as 51,000 shares of stock and accounts receivable from Tinker AFB, Defense ISC, and Lockheed. In its response to plaintiff's motion to compel, defendant provided copies of two agreements that it alleges comprise the security agreements. In its reply, plaintiff argues that it seeks documentary evidence to support KAPI's claim that it repaid the loan and canceled plaintiff's stock certificate. However, Interrogatory 21 merely asks KAPI to specify the security that KAPI pledged to secure plaintiff's loan. The dispute about repayment raised by the parties is outside the scope of this interrogatory. Because it appears that KAPI has complied with this discovery request, plaintiff's motion to compel further responses to its First Set of Interrogatories, Number 21, is hereby **DENIED**.

### B. Plaintiff's First Request For Production of Documents

9

A number of plaintiff's requests for documents involve KAPI's corporate records and accounts. Plaintiff argues that under Texas law, plaintiff's status as a shareholder gives it authority to examine KAPI's records and accounts. Therefore, plaintiff's motion to compel KAPI to produce corporate records and accounts should be granted. KAPI disputes plaintiff's status as a shareholder, but as explained above, has not offered evidence to support its contention.

The Texas Business Corporation Act Article 2.44 provides in relevant part:

> A. Each corporation shall keep books and records of account and shall keep minutes of the proceedings of its shareholders, its board of directors, and each committee of its board of directors. Each corporation shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of the original issuance of shares issued by the corporation and a record of each transfer of those shares that have been presented to the corporation for registration of transfer. Such records shall contain the names and addresses of all past and current shareholders of the corporation and the number and class or series of shares issued by the corporation held by each of them. Any books, records, minutes, and share transfer records may be in written form or in any other form capable of being converted into written paper form within a reasonable time. The principal place of business of a corporation, or the office of its transfer agent or registrar, may be located outside the State of Texas.
>
> C. Any person who shall have been a shareholder for at least six (6) months immediately preceding his demand, or shall be the holder of at least five per cent (5%) of all the outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person or by agent, accountant, or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes, and share transfer records, and to make extracts therefrom.

As explained above, plaintiff provided evidence that Knight transferred his 51,000 shares of KAPI stock to plaintiff on April 29, 1999, and that KAPI issued a new stock certificate for

51,000 shares to plaintiff on March 17, 2000.[21] According to plaintiff, KAPI represented that 51,000 shares constituted a majority ownership of the outstanding KAPI stock. Regardless, evidence submitted by plaintiff shows that KAPI was authorized to issue 1,000,000 shares of stock.[22] Consequently, plaintiff's 51,000 shares constituted more than 5% of KAPI's outstanding stock. Further, plaintiff has submitted evidence showing that it obtained its stock in March 2000, and therefore, has held its interest for more than six months. Accordingly, based on the current record in this case, plaintiff has the right under Texas law to inspect KAPI's relevant books and records of account, minutes, and share transfer records.

**Requests for Production 2, 9, 19, 22, 23**

Requests for production 2, 9, 19, 22, and 23 all seek the discovery of corporate records that KAPI has an obligation to provide plaintiff under the Texas Business Corporation Act Article 2.44. Plaintiff has raised allegations of fraud in the transfer of stock and allegations that KAPI breached its obligations under agreements to prevent the diminution of plaintiff's majority stockholder position. Further, plaintiff has alleged that KAPI ignored its requests for shareholder meetings whereby plaintiff could request information and exercise its rights as a shareholder. Accordingly, plaintiff has demonstrated that the discovery that it seeks through the above requests is relevant to its claims for fraud, fraud in the transfer of stocks, and breach of contract. Plaintiff's motion to compel further responses to its First Set of Requests for Production, Numbers 2, 9, 19, 22, and 23, is hereby **GRANTED**.

---

[21] Plaintiff submitted a copy of Knight's certificate for 51,000 shares of KAPI along with a copy of Knight's endorsement of the share certificate to plaintiff. Plaintiff also submitted a worksheet showing Knight's shares cancelled on March 17, 2000, and 51,000 shares issued to plaintiff the same day. Plaintiff did not submit an actual stock certificate for its shares. Docket Entry 67, Exhs. 3 and 4.

[22] Docket Entry 67, Exh. 4.

**Production Requests 1, 4, 6, 12, 13, 15, 21**

Through Production Requests 1, 4, 6, 12, 13, 15, and 21, plaintiff seeks tax returns, financial statements, bank records showing monies wired transferred by plaintiff to KAPI, and records documenting monies received and paid to plaintiff. As plaintiff argues, these records are relevant to plaintiff's claims that KAPI failed to repay plaintiff the monies that it loaned. The records are also necessary to support KAPI's claims that it repaid the loans. Furthermore, the requested records should be made available to plaintiff as corporate financial records under the Texas Business Corporation Act Article 2.44. Accordingly, plaintiff's motion to compel further responses to its First Set of Requests for Production, Numbers 1, 4, 6, 12, 13, 15, and 21, is hereby **GRANTED**.

**Production Requests 3, 10**

Production Request 3 asks KAPI to produce copies of any and all notes by and between KAPI and plaintiff. Production Request 10 asks for copies of all correspondence by and between KAPI and its authorized agents and plaintiff and its authorized agents. The written documents sought by plaintiff cover the business transactions between the parties including the loan agreements and any promises or assurances exchanged by the parties. These documents are highly relevant to plaintiff's claims and may lead to further admissible evidence. Accordingly, plaintiff's motion to compel further responses to its First Set of Requests for Production, Numbers 3 and 10, is hereby **GRANTED**.

**Production Requests 7, 8**

Production Request 7 asks for any and all security agreements that KAPI entered into with third parties from year end 1996 to present, and Production Request 8 asks for copies of UCC-1

filings against KAPI for the same time period. Plaintiff explains that the requests will provide relevant information of any competing security interests and UCC-1 financing statements that may jeopardize plaintiff's security interest.

In granting plaintiff's motion to compel information requested in Interrogatory 12, the Court determined that information concerning secured loans was relevant to plaintiff's causes of action. For the same reasons stated above, the actual security agreements are relevant to plaintiff's case. However, plaintiff can easily perform a UCC-1 search to determine which if any filed financing statements would jeopardize its purported security interests. Furthermore, plaintiff does not explain how an unfiled UCC-1 financing statement will jeopardize its purported security interests. Accordingly, plaintiff's motion to compel further responses to its First Set of Requests for Production, Number 7, is hereby **GRANTED**, and its motion to compel further responses to Number 8, is hereby **DENIED**.

**Production Request 5**

Product Request 5 asks for copies of all bids that KAPI submitted for government contracts from year end 1996 to the present. Plaintiff explains that the purpose for requesting the bids for government contracts is that such bids require the contracting party to list its directors and shareholders. However, the Court has already agreed that KAPI must give plaintiff access to its corporate accounts and records. These documents will provide plaintiff with information concerning directors and shareholders. To require KAPI to retrieve and provide copies of all its bids on government contracts for the relevant time period to produce this limited information would be unduly burdensome. Plaintiff can more easily access the information by inspecting KAPI's corporate records and filings. Plaintiff's motion to compel further responses to its First

Set of Requests for Production, Number 5, is hereby **DENIED**.

**Production Request 14**

Production Request 14 asks that KAPI produce copies of all correspondence, security agreements, loan agreements, or any other document that references plaintiff. Plaintiff states the purpose of the request is to gather all correspondence and evidence of the loan agreements, the shares, the share certificates, the minutes, and any document that references plaintiff. This request is a catch-all provision to supplement plaintiff's other interrogatories and production requests that already address correspondence, security agreements, loan agreements, shares, share certificates, and minutes. To the extent that the request asks for "documents" referring to the parties transactions or other documents that relate to business, financial, or ownership matters, the request is relevant to plaintiff's breach of contract, fraud, and fraud in the transfer of stock claims. Plaintiff's motion to compel further responses to its First Set of Requests for Production, Number 14, is hereby **GRANTED**.

**Production Request 20**

Production Request 20 asks KAPI to produce any document whereby Knight represents himself as a one hundred percent shareholder of KAPI. Included as examples of the requested documents are tax returns, government bids or contracts, private bids or contracts, bond sheets, financing statements, and all documents provided to lenders, clients, or financial institutions. Plaintiff limits this request to documents created after 1996. Plaintiff explains that the purpose of the request is to elicit proof that KAPI and Knight intended to obtain monies from plaintiff without providing security and defraud plaintiff.

Most of the types of documents identified by plaintiff have been addressed in conjunction

with other interrogatories or document production requests. To the extent that plaintiff seeks other documents containing an assertion that Knight owns one hundred percent of KAPI's stock, the request seeks evidence relevant to plaintiff's claims of misrepresentation and fraud in the transfer of stock. Plaintiff has alleged that it owns 51,000 shares of stock, and any contentions by KAPI that Knight owns all its stock is relevant to plaintiff's case. Plaintiff's motion to compel further responses to its First Set of Requests for Production, Number 20, limited to documents created after 1996, is hereby **GRANTED**.

**C. Requests for Bringing and Defending the Motion to Compel.**

Plaintiff requests an award of attorney fees in the amount of $1,000.00 incurred in bringing its motion to compel. KAPI requests an award of attorney fees in the amount of $1,800.00 incurred in resisting plaintiff's motion to compel.

Federal Rule of Civil Procedure 37(a)(4) provides courts with authority to shift the cost of prosecuting or defending a motion from the prevailing party to the losing party. However, in cases where the losing party was substantially justified in its position or other circumstances make the award of expenses unjust, the court can decline to award expenses to the prevailing party. Likewise, in cases where a motion to compel is granted in part and denied in part, a court can apportion the expenses among the parties and persons.[23]

In this case, the Court granted in part and denied in part, plaintiff's motion to compel. Factual and legal issues have been raised concerning the merits of the case, and consequently, the scope of discovery. Based on the record, plaintiff was substantially justified in bringing the motion and defendant was substantially justified in resisting disclosure, to the extent that awarding

---

[23] Fed. R. Civ. P. 37(a)(4).

attorney fees to either party would be unjust. The better course is to require each party to burden the burden of its own expenses incurred in conjunction with this motion to compel. Accordingly, the requests for attorneys fees are **DENIED**.

    It is so **ORDERED**.

    **SIGNED** on October 30, 2006.

                                             */s/ Nancy Stein Nowak*
                                             NANCY STEIN NOWAK
                                             UNITED STATES MAGISTRATE JUDGE