UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EXPORT WORLDWIDE, LTD., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| VS. | ) | Civil Action No.  SA-05-CA-647-XR |
| | ) | |
| ALFRED KNIGHT, individually, | ) | |
| KNIGHT AEROSPACE PRODUCTS, | ) | |
| INC., T&M LEASE AND FINANCE, | ) | |
| L.L.C. | ) | |
| | ) | |
| **Defendants.** | | |

## ORDER

On this date, the Court considered Plaintiff's motion for summary judgement on its claim for breach of the mediated settlement agreement.  The motion is GRANTED (Docket No. 71).  The Court will order specific performance of the mediated settlement agreement.  Pre- and post-judgment interest will accrue at a rate of 8.25%.  The Court will enter Judgment on a separate document pursuant to Fed. R. Civ. P. 58.  After entry of Judgment, Plaintiff should file a motion for attorney's fees with appropriate supporting documentation pursuant to Local Rule CV-7(i).

### I. Factual & Procedural Background

Plaintiff commenced this action on July 17, 2005 by filing a Complaint alleging multiple claims based on breach of contract and fraud.  Plaintiff invoked the diversity jurisdiction of this Court by alleging that Plaintiff Export Worldwide, Ltd. ("EWL")  is a citizen of the Bahamas and Defendants Knight Aerospace Products, Inc. ("KAPI"), T&M Finance and Lease ("T&M"), and Alfred Knight ("Knight") are citizens of Texas.  Plaintiff alleged that the amount in controversy

exceeded $75,000.00.

Plaintiff alleged that it entered into various agreements to lend money to KAPI, and KAPI agreed to repay the funds with interest. As of June 6, 2000, KAPI owed EWL a debt on an on-book loan, which had been paid down to the amount of $26,344.46 ("on-book Debt"). Additionally, KAP owed EWL a debt on an off-book loan, which had an outstanding balance of $201,395.04 as of May 1999 ("off-book Debt").

On or about April 29, 1999, KAPI was in default of both Debts to EWL. KAPI has previously pledged 51,000 shares of KAPI stock owned by Knight as collateral for the on-book Debt. Plaintiff allegedly threatened to foreclose on its collateral. In response to Plaintiff's demands for payment, Knight allegedly endorsed his original share certificate to Plaintiff on April 29, 1999, and subsequently, on March 17, 2000, KAPI issued a new certificate for 51,000 shares to Plaintiff. Plaintiff alleges that this share transfer gave EWL slightly more than a 77% ownership interest in KAPI.

Plaintiff further alleged that Knight and Plaintiff entered into an agreement with KAPI's consent under which Plaintiff would reconvey the shares to Knight upon payment of all the sums of money owed to Plaintiff. In conjunction with the other agreements, KAPI allegedly agreed and represented to Plaintiff that the 51,000 shares constituted a majority ownership interest in KAPI, and KAPI would not take any actions to directly or indirectly diminish Plaintiff's ownership interest without Plaintiff's agreement. Additionally, KAPI and Knight allegedly agreed that it would assign to EWL the future proceeds of three KAPI contracts, which were valued at $169,255.

Plaintiff contends that KAPI breached a number of its agreements with Plaintiff. Plaintiff alleges, *inter alia*, that: (1) KAPI transferred the proceeds of the assigned contracts to T&M instead

of EWL; (2) KAPI failed to file a UCC-1 financing statement on Plaintiff's behalf after agreeing to do so; (3) KAPI issued and pledged additional common stock without consulting Plaintiff; (4) KAPI entered into agreements with T&M to take control of KAPI's business; (5) KAPI made preferential payments to suppliers and T&M instead of paying Plaintiff; and (6) KAPI failed to notify Plaintiff of shareholder meetings, conduct shareholder meetings, or make its corporate books and records available to Plaintiff.

Plaintiff alleged that it has only received one $25,000 payment on May 3, 2004 in satisfaction of these Debts. Plaintiff alleged it attended negotiations with T&M and KAPI in 2003, which were unfruitful. During the course of these negotiations, EWL learned that KAPI had issued an additional 34,000 shares of stock to third parties.

Plaintiff contends that KAPI has committed breach of contract, fraud, fraud in a stock transfer, self-dealing, conversion, and conspiracy. It requests an accounting, compensatory damages, exemplary damages, costs and attorney's fees.

On June 8, 2006, Joseph Casseb, the parties' agreed neutral mediator, notified the Court that the parties had settled their dispute during mediation. The mediated settlement agreement purported to fully dispose of all issues and claims between the parties. On June 12, 2006, the Court vacated all remaining deadlines in the Scheduling Order and dismissed as moot all pending motions in order to allow the parties to complete their settlement efforts (Docket No. 59). The parties were ordered to submit a stipulation of dismissal or an agreed judgment by July 14, 2006. On July 10, 2006, Plaintiff filed an advisory to the Court ("Advisory") requesting an extension of time.

The Advisory stated that Defendants had breached the mediated settlement agreement by failing to timely pay the settlement amount and submit a draft release to Plaintiff. The agreement

stated that Defendants would pay $85,000 to Plaintiff on or before July 7, 2006 in exchange for a release of all claims against Defendants and the reconveyance of the 51,000 shares to Knight. Defendants requested an extension of time to pay the $85,000.   In consideration for the payment of an additional $5,000, Plaintiff agreed to grant Defendants an extension until August 4, 2006 to fully comply with the terms of the mediated settlement agreement.

After Defendants failed to comply with the terms of the agreement by August 4, 2006, Plaintiff filed a motion for leave to file amended pleadings and re-open discovery (Docket No. 63). Plaintiff sought to file a First Amended Complaint that included a claim for breach of the mediated settlement agreement. In response, Defendants stated that KAPI was "simply unable to raise the funds necessary to make the $85,000 payment and actually exhibited its good faith by paying Plaintiff for its subsequent agreement to extend the deadline."  Defendants requested that the Court "deem the Mediation Agreement null and void" and deny Plaintiff's motion to file its First Amended Complaint.  After an oral hearing was conducted before the Court on September 6, 2006, the Court granted Plaintiff's motion to file its First Amended Complaint.

Plaintiff filed a motion for summary judgment on its breach of contract / mediated settlement agreement claim on January 8, 2007.  Plaintiff argued that Defendants are jointly and severally liable for breach of the mediated settlement agreement.  Plaintiff sought specific performance of the mediated settlement agreement and attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.   Although Plaintiff sought summary judgment against all three co-Defendants, only Defendant T&M actually filed a response to the motion.

In response, Defendant T&M argued that the motion should be denied because "each and every element of Plaintiff's cause of action has no evidentiary support."  T&M argued that the copy

of the mediated settlement agreement attached to Plaintiff's motion for summary judgment was not authenticated.  T&M further argued that there are genuine issues of material fact as to whether Plaintiff has performed all conditions precedent to entitle it to the relief that it is seeking.  T&M also argued that there are genuine issues of material fact as to whether Plaintiff's claims are barred by the doctrines of waiver and election of remedies.  Alternatively, T&M argued that Plaintiff's attorney's fees request is unsupported and unreasonable.[1]

The response was accompanied by the affidavit of Michael McCullick, member and authorized agent of T&M.  McCullick stated that "Plaintiff has not entered into a mutual settlement agreement with T&M and the other defendants in this lawsuit which contains its release of claims against T&M and the other defendants.  In fact, Plaintiff has continued to pursue its claims originally asserted against T&M in this litigation.  Plaintiff has not dismissed its claims in this litigation with prejudice."  The response was also accompanied by the affidavit of William B. Kingman, attorney for T&M.  Kingman stated that Plaintiff's request for $35,000 in attorney's fees was unreasonable because the amount was based solely on the terms of the contingency fee contract between Plaintiff and its attorney, which is not evidence of a reasonable and necessary fee.

In reply, Plaintiff's attorney verified the authenticity of the mediated settlement agreement with his own affidavit.  Plaintiff argued that T&M should not be allowed to rely on its own breach of the mediated settlement agreement (failure to prepare the release and make payment) in order to avoid liability on the breach of contract claim.  Plaintiff notes that T&M provided no legal or evidentiary support for their election of remedies and waiver defenses, and Plaintiff reasserts that

---

[1]The Court notes that T&M's response and sur-reply do not contain any citations to legal authority, which is a violation of Local Rule CV-7(c) ("The specific legal authorities supporting any motion shall be cited . . . .").

an attorney's fees calculation based on a contingency fee contract is indicative of customary and reasonable fees. Plaintiff concludes that it is entitled to summary judgment because no issues of material fact exist and the Court may interpret the contract as a matter of law.

In its sur-reply, T&M argues that there is no credible evidence before the Court that T&M is severally liable to Plaintiff and the requested attorney's fees are unreasonable.

## II. Legal Analysis

### A.     Summary judgment standard of review.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073 (1998).

A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir.1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

-6-

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "[T]he court must review the record 'taken as a whole.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997), *cert. denied*, 525 U.S. 1067 (1999). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255; *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49  n. 5 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir.1999); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir.1998). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999); *accord Little*, 37 F.3d at 1075 (" [w]e do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.") (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14 (1992) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2nd Cir.1989)). The

nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

**B.    The Court finds that Defendants breached the mediated settlement agreement as a matter of law, and the Court will order specific performance of that agreement.**

In exercising its diversity jurisdiction, this Court will apply the law of Texas in evaluating Plaintiff's claim for breach of the mediated settlement agreement. *Blase Industries Corp. v. Anorad Corp.*, 442 F.3d 235, 237 (2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)). The mediated settlement agreement in this case states that it "shall be construed in accordance with the laws of the State of Texas." Defendants do not argue that this contractual choice-of-law provision is unenforceable.

A written settlement agreement may be enforced though one party withdraws consent before judgment is rendered on the agreement. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996). Where consent is lacking, however, a court may not render an agreed judgment on the

settlement agreement, but may enforce it only as a written contract. *Id.* The party seeking enforcement must pursue a separate breach of contract claim, which is subject to the normal rules of pleading and proof. *Id.* A party may attempt to enforce a settlement agreement specifically. *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 266 n.12 (Tex. App.–Austin 2002, no pet.); *Stewart v. Mathes*, 528 S.W.2d 116, 119 (Tex. Civ. App.–Beaumont 1975, no writ). In this case, Plaintiff filed a First Amended Complaint, which alleged a separate breach of contract claim, after Defendants failed to perform according to the terms of the mediated settlement agreement.

Where the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should be asserted in that court under the original cause number, such as through an amended pleading or counterclaim. *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 245 (Tex. App.–Texarkana 2005, no pet.); *see also Padilla v. LaFrance*, 907 S.W.2d 454 (Tex.1995). The settlement agreement alone is insufficient to provide a basis for judgment because it would deprive a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. *See Cadle Co. v. Castle*, 913 S.W.2d 627, 632 (Tex. App.–Dallas 1995, writ denied). If a motion for summary judgment gives the non-movant the ability to respond to the allegations in the motion, summary judgment might be proper. *See Batjet, Inc.*, 161 S.W.3d at 248. In this case, Plaintiff followed the appropriate procedure for enforcing the mediated settlement agreement when it filed its First Amended Complaint alleging the additional count of breach of contract. Additionally, Defendants were given an opportunity to respond to Plaintiff's motion for summary judgment.

Rule 11 of the Texas Rules of Civil Procedure provides in its entirety:

Unless otherwise provided in these rules, no agreement between attorneys or parties

touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Rule 11 provides threshold requirements that apply to all settlement agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984) ("Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments.")); *Roeglin v. Daves*, 83 S.W.3d 326, 330 (Tex. App.–Austin 2002, pet. denied). Thus, "compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit." *Kennedy*, 682 S.W.2d at 529.

In this case, the mediated settlement agreement was signed by both an official representative and an attorney of every party involved in the litigation. *See Ebner v. First State Bank*, 27 S.W.3d 287, 297 (Tex. App.–Austin 2000, pet. denied) (indicating Rule 11 agreement may be signed by party or party's attorney). It was filed with the Court as an attachment to Plaintiff's motion for summary judgment, satisfying Rule 11's filing requirement. *See Padilla*, 907 S.W.2d at 461 (holding that Rule 11 filing requirement is satisfied so long as agreement is filed before party seeks to enforce it); *Southwestern Bell Tel. Co. v. Perez*, 904 S.W.2d 817, 822 (Tex. App.–San Antonio 1995, no writ) (holding that attaching agreement to pleadings meets Rule 11's filing requirement). The Defendants do not argue that their representatives and their attorneys did not sign the mediated settlement agreement. Therefore, the Court does not need to determine whether Defendants' attorneys had actual or apparent authority to bind their principals because the principals signed the contract. *See West Beach Marina,* 94 S.W.3d at 256. The agreement was signed by Glenn Deadman, the attorney for EWL, Ronald Shaw, the representative of T&M, William Kingman, the attorney for T&M, Alfred Knight, the representative of KAPI, and Johnny Jane, the attorney for Knight and

KAPI.

Rule 11 requires settlement agreements to "be in writing." The Texas Supreme Court analogizes this requirement to the statute of frauds, which requires that "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony."*Padilla*, 907 S.W.2d at 460 (citing *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978)). The written memorandum, however, need not be contained in one document. *Id.* (citing *Adams v. Abbott*, 254 S.W.2d 78, 80 (1952)). The Rule 11 writing requirement has been satisfied in this case.   The crucial terms of the mediated settlement agreement are as follows:

1. It is understood and agreed that this is a compromise of a disputed claim . . . .

2. Each signatory hereto hereby warrants and represents that such person has authority to settle for the party or parties for whom such person acts . . . .

3. Total amounts to be paid by Defendants . . . for the benefit of Export Worldwide, Ltd.: $85,000 on or before July 7, 2006. Each party shall bear its own court costs and attorney's fees.

4. Claims to be released: Any and all claims by and between the parties hereto and liens.  Upon receipt of said settlement funds, Export Worldwide shall deliver to counsel for Knight Aerospace (John Lane) all promissory notes marked "paid in full" and original stock certificates in Knight Aerospace Products, Inc., which shall be duly endorsed . . . .

5. Parties shall enter into mutual settlement agreement with reciprocal releases . . .

6. All of Plaintiff's claims and any counterclaims shall be dismissed with prejudice . . . .

8. Counsel for Defendants shall deliver drafts of releases and any further documents to be executed in connection with this settlement . . . within fourteen (14) days from this date . . . . [T]he parties confirm that this is a written settlement agreement as contemplated by Section 154.071 of the Texas Civil Practice and Remedies Code.

9. This Settlement Agreement is not subject to revocation and is made and performable in Bexar County, Texas, and shall be construed in accordance with the laws of the State of Texas.

SIGNED and AGREED to this 8th day of June, 2006.

Rule 11, although applicable to all settlement agreements, is not exclusive, and other law may provide additional requirements before an agreement is enforceable. *See Kennedy*, 682 S.W.2d at 529. The act provides: "If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM. CODE § 154.071(a). Courts employ the same procedures used to enforce other contracts when examining mediated settlement agreements. *See, e.g., Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 209 (Tex. App.–Houston [1st Dist.] 2004, pet. denied).

To have an enforceable agreement, the parties must agree on all material terms so that a court may determine the obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221(Tex. 1992). However, the parties may agree on certain contract terms and leave others for later negotiation. *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex.1972). It is generally a fact question for the jury to determine whether the parties intended to be bound by the written agreement or intended the agreement to be preliminary and without legal significance. *See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988). However, the court may determine as a matter of law that the language in the agreement conclusively establishes the intent of the parties. *Id.*

The Court determines that the parties agreed to all material terms when they executed the mediated settlement agreement. The agreement stated that Defendants would pay Plaintiff $85,000 in exchange for the release of all Plaintiff's claims against Defendants and reconveyance of the

51,000 shares.  The Court also finds that the language of the agreement conclusively establishes the intent of the parties.  The agreement states that "[t]he parties acknowledge that bona fide disputes and controversies exist between them, both as to liability and the amount thereof, if any, and by reason of such disputes and controversies they desire to compromise and settle all claims and causes of action of any kind whatsoever which the parties have or may have arising out of the transaction or occurrence which is the subject of this litigation."  The Court believes that this express, unequivocal statement conclusively establishes the intent of the parties to be bound by the terms of the mediated settlement agreement.  This position is reinforced by the fact that the agreement is signed by the authorized representatives and the attorneys of all parties involved in this litigation, and the agreement was reached at a settlement conference conducted by a professional mediator.

The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex.1999). Whether a contract is ambiguous is also a question of law. *See Columbia Gas Transmission Corp. v. New Ulm Gas*, Ltd., 940 S.W.2d 587, 589 (Tex.1996). To determine whether a contract is ambiguous, the Court examines the agreement as a whole in light of the circumstances present when the parties entered into the contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex.1995). The Court will examine and consider the entire writing in an effort to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision will control; rather, all provisions must be considered with reference to the whole instrument. *Id.*  The Court's primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). If a written contract is worded in such a way that it can be given a definite or

certain legal meaning, then the contract is not ambiguous. *CBI Indus.*, 907 S.W.2d at 520. A contract will become ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Id.* An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau*, 876 S.W.2d at 134.

      The Court concludes that the terms of this contract were unambiguous as a matter of law. The language of the agreement simply is not subject to two or more reasonable interpretations, and Defendants have not offered a conflicting or alternative interpretation of this contract.  After examining the contract in its entirety, the Court finds that Defendants agreed to pay the sum of $85,000 to Plaintiff in exchange for a release of all claims against Defendants and reconveyance of the 51,000 shares.

      The Court may not consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract in order to create an ambiguity. *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex. App.–Houston [1st Dist.] 1998, no pet.). A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex.1996). An "ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *CBI Indus.*, 907 S.W.2d at 521.  One of the exceptions to the parol evidence rule is that if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete. *Warren Bros. Co. v. AAA Pipe Cleaning Co.*, 601 S.W.2d 436, 438 (Tex. Civ. App.–Houston [1st Dist.]

1980, writ ref'd n.r.e.) (quoting *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 195 S.W. 184, 185 (1917)). In other words, "[w]here a writing is incomplete or ambiguous, parol evidence is admissible to explain the writing or to assist in the ascertainment of the true intentions of the parties insofar as the parol evidence does not alter or contradict any part of the written memorandum in question." *Warren Bros.*, 601 S.W.2d at 438-39. However, a lack of clarity in the language chosen by the parties does not suffice to render an agreement ambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (1951). Rather, "[o]nly if the intention of the parties as expressed on the face of the document is doubtful may the court resort to parol evidence to resolve the doubt." *Massey v. Massey*, 807 S.W.2d 391, 405 (Tex. App.–Houston [1st Dist.] 1991, writ denied). An ambiguity does not arise simply because the parties advance conflicting interpretations of their agreement. *See Forbau*, 876 S.W.2d at 134. The Court will not consider any parol evidence regarding the interpretation of the mediated settlement agreement because the Court has already determined that the language of the contract is unambiguous.

The McCullick affidavit submitted by T&M states that "Plaintiff has not entered into a mutual settlement agreement with T&M and the other [D]efendants in this lawsuit which contains its release of claims . . . . Plaintiff has continued to pursue its claims originally asserted against T&M [and] . . . has not dismissed its claims in this litigation with prejudice." The McCullick affidavit reinforces the conclusion that Defendants materially breached the mediated settlement agreement. The agreement contemplates the following sequence of events: (1) Defendants shall deliver drafts of the releases to Plaintiff by June 22, 2006; (2) Defendants shall pay Plaintiff the sum of $85,000 by July 7, 2006; (3) the parties will execute reciprocal releases, EWL will indemnify Defendants from any and all claims that may be brought by Stillwater Mortgage Investment Company, and EWL

-15-

will reconvey the 51,000 shares; and (4) Plaintiff will dismiss with prejudice all claims against Defendants.  Plaintiff has not yet dismissed its claims against Defendants with prejudice because Defendants materially breached the terms of the agreement by failing to perform dependent promises.  Plaintiff has not entered into a mutual settlement agreement with Defendants because Defendants did not deliver the draft release or pay $85,000 to Plaintiff.  The Court will not allow Defendants to use their material breach of the settlement agreement as a defense to the enforceability of that agreement.

Plaintiffs agreement to execute releases and dismiss the claims against Defendants was a dependent promise.  A dependent promise is a promise conditioned on the performance of a reciprocal promise by the other party.  *D.E.W., Inc v. Depco Forms*, 827 S.W.2d 379, 382 (Tex. App.–San Antonio 1992, no writ).  If Defendants deliver the release and pay $85,000 to Plaintiff, then Plaintiff will execute the release and dismiss the claims with prejudice.  In Texas, the general rule is that reciprocal promises in a contract, absent intentions to the contrary, are presumed to be mutually dependent and the breach of one will excuse the performance of the other. *Id.*  In this case, Defendants *breached first* by not delivering the release and paying Plaintiff $85,000, such that Plaintiff was excused from performance of its remaining obligations under the contract.

Relying on the McCullick affidavit, T&M argues that there is a genuine issue of material fact as to whether Plaintiff has performed all conditions precedent to entitle it to relief and whether Plaintiff's actions or inactions excuse Defendants from any contractual obligations.  The Court disagrees.  A condition precedent to a contract is an act or event that must occur before the defendant is required to perform its own obligations.  *Hohenberg Bros. Co. v. Goerge E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).  Defendants did not specifically deny that Plaintiff failed to perform a

particular condition precedent, and the Court cannot identify any conditions precedent contained in the contract that Plaintiff failed to perform. *See* TEX. R. CIV. P. 54; *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 n.6 (Tex. 1998).

The elements of an action for breach of contract are the following: (1) a valid, enforceable contract; (2) the plaintiff has standing to sue; (3) the plaintiff performed, tendered performance, or was excused from performing; (4) the defendant breached; and (5) the defendant's breach caused injury to the plaintiff. *McLaughlin,Inc. v. Northstar Drilling Techs.*, 138 S.W.3d 24, 27 (Tex. App.–San Antonio 2004, no pet.) (elements 1, 3-5); *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 862 (Tex. App.–San Antonio 2003, no pet.) (element 2).

The court finds that a valid, enforceable contract existed as a matter of law because Plaintiff has established that there was an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration. *See America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.–San Antonio 1996, writ denied) (whether a contract is enforceable is a question of law); *Buxani v. Bussbaum*, 940 S.W.2d 350, 352 (Tex. App.–San Antonio 1997, no writ) (elements of a valid, enforceable contract). Plaintiff has standing to sue because it is in privity with Defendants through the contract. *See Conquest Drilling Fluids v. Tri-Flo Int'l*, 137 S.W.3d 299, 308 (Tex. App.–Beaumont 2004, no pet.). The Court finds that Plaintiff was excused from performance because Defendants materially breached the contract. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). The failure of Defendants to deliver the release and pay Plaintiff $85,000 was a material breach of the settlement agreement. Finally, the Court finds that the breach caused injury to Plaintiff.

If the parties modify a valid contract, the modification must be supported by new

consideration. *Hathaway v. General Mills*, 711 S.W.2d 227, 228 (Tex. 1986).  In this case, Defendants paid Plaintiff $5,000 as consideration for an extension of the deadlines contained in the original settlement agreement.  Defendants failed to comply with the amended deadlines.

T&M cited to no legal authority for their waiver and election of remedies defenses.  After Defendants breached the settlement agreement, Plaintiff filed a motion to amend the pleadings to assert the breach of contract claim and filed a motion for summary judgment on that claim.  The Court finds that the defenses of waiver and election or remedies are inapplicable to the current case.

Specific performance is an appropriate remedy for breach of a mediated settlement agreement. *West Beach Marina*, 94 S.W.3d at 266 & n.12.  The Court finds that Plaintiff has "clean hands" and that the contract is fair and free from misrepresentation, misapprehension, fraud, mistake, or surprise. *Lazy M Ranch v. TXI Operations*, 978 S.W.2d 678, 683 (Tex. App.–Austin 1998, pet denied). A damages remedy would be difficult to calculate and would not make Plaintiff whole. *Horton v. Robinson*, 776 S.W.2d 260, 267 (Tex. App.–El Paso 1989, no writ).  Plaintiff has elected the equitable remedy of specific performance. *See West Beach Marina*, 94 S.W.3d at 266 n.12. Consequently, the Court will order that the parties specifically perform the terms of the mediated settlement agreement.  An Order of specific performance will dispose of all claims and disputes between the parties.

Joint and several liability arises in contract based upon the relationship between the parties and the existence of what amounts to joint promises. *See CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership*, 164 S.W.3d 675, 684 (Tex. App.–Austin 2005, no pet.) The co-Defendants in this case have joint and several liability on the $85,000 settlement amount because all co-Defendants were parties to the same contract and promised the same performance. *Id.*

-18-

Plaintiff's motion for summary judgment was intended to "fully and finally resolve all claims and disputes by and between EWL and T&M pursuant to the mediated Settlement Agreement." Motion for Summary Judgment, ¶ 4.  Pursuant to the terms of the settlement agreement, Plaintiff is awarded $85,000.  Defendants are jointly and severally liable for this amount.  All remaining claims asserted by Plaintiff are DISMISSED WITH PREJUDICE.  Within ten days after Plaintiff receives the $85,000 settlement amount from Defendants, the parties are ORDERED to comply with paragraphs four and five of the mediated settlement agreement.

**C.      Plaintiff is entitled to pre- and post-judgment interest at a rate of 8.25%.**

Plaintiff requested pre- and post-judgment interest in its First Amended Complaint.  *See* ¶ 30. The Court may award pre-and post-judgment interest on monetary damages awarded as part of specific performance.  *West Beach Marina*, 94 S.W.3d at 266. The original contract required that $85,000 be paid by July 7, 2006, and the contractual modification extended that deadline to August 4, 2006.  The Court will award pre- and post-judgement interest at the current judgment rate of 8.25%.[2]    *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex.1998); *see Cuberland Cas. & Sur. Co. v. Nkwazi, L.L.C.,* No. 03-02-00270-CV, 2003 WL 21354608, *6 (Tex. App.–Austin June 12, 2003) ("In a breach-of-contract cause of action, prejudgment interest is calculated as simple interest and is based on the postjudgment interest rate applicable at the time of judgment")*. The award of pre-judgment interest is equitable and the award of post-judgment interest is made pursuant to Tex. Fin. Code § 304.003. Pre-judgment interest will accrue on the principal amount only beginning on September 6, 2006 (the date Plaintiff's First Amended Complaint was filed), and it will be computed as simple interest. *See* TEX. FIN. CODE §

---

[2]*See* Interest Rates, http://www.occc.state.tx.us

304.104.

**D.**  **Plaintiff should file a motion for attorney's fees with appropriate supporting documentation pursuant to Local Rule CV-7(i) after the Court enters Judgment.**

Plaintiff requested attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001. First Amended Complaint, ¶ 53. When the contract between the plaintiff and its attorney provides for a contingency award of attorney's fees, attorney's fees cannot be recovered from the defendant based *solely* on evidence of the fee agreement. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1998); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 106 (Tex. App.–San Antonio 2003, pet denied).  To recover attorney's fees, the plaintiff must prove that the attorney's fees were reasonable and necessary for the prosecution of the case. *Arthur Andersen,* 945 S.W.2d at 818-19.  The plaintiff must also ask the fact-finder to award the fees in a specific dollar amount, not as a percentage of the judgment. *Id.* at 819. The Texas Supreme Court has adopted eight factors to be used by the fact-finder to determine the reasonableness of the fees. *Id.* at 818.  One method of computing a reasonable fee under section 38.001 is the "lodestar" method, or "the product of reasonable hours times a reasonable rate." *Toshiba Machine Co., America v. SPM Flow Control, Inc.*, 180 S.W.3d 761 (Tex. App.–Fort Worth 2005, no pet.).  However, strict reliance on the lodestar method of calculation is not required in breach of contract actions so long as the plaintiff can demonstrate that the fees sought are reasonable. *See, e.g., Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 240-41 (Tex. App.–San Antonio 2001, pet. denied). Unless the claims are inextricably intertwined, the plaintiff will usually be required to segregate fees incurred in prosecuting a claim for which attorney's fees may be recovered from those in which they may not.  *See West Beach Marina*, 94 S.W.3d at 267.

-20-

Plaintiff should file a motion for attorney's fees pursuant to Local Rule CV-7(i) after the Court enters Judgment.  Defendants may assert their objections to Plaintiff's recovery of attorney's fees at that time.

### III. Conclusion

The Court will order specific performance of the mediated settlement agreement.  Pre- and post-judgment interest will accrue at a rate of 8.25%. The Court will enter Judgment on a separate document pursuant to Fed. R. Civ. P. 58.  After entry of Judgment, Plaintiff should file a motion for attorney's fees with appropriate supporting documentation pursuant to Local Rule CV-7(i).

It is so ORDERED.

SIGNED this 27th day of February, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE